Your argument next in order, 067328, forcing against the Department of Veterans Affairs. Mr. Bolger, whenever you're ready. Thank you, Your Honor. Your Honor. I think you're reserving three minutes for rebuttal, is that correct? That's correct, Your Honor, thank you. Very well. Good afternoon, Your Honor. My name is David Beltsman on behalf of the appellant, Mr. Forcier, and may it please the Court. We contend in this appeal, Your Honor, that the precedential decision of the Court of Appeals for Veterans Claims depended upon the erroneous reading of two federal statutes, 7104D-1 of Title 38 and 5103A, the D-assist provision, as well as the implementing regulations. And that misreading or misapplication of those statutes allowed to stand errors by the board in this decision that the Veterans Court itself characterized as illogical, improper, cavalier approach to assessing the evidence. As you know, this is a claim for PTSD, service connection, therefore, and the evidence on diagnosis was disputed. There was evidence of medical opinion by Ms. Johnston, a licensed social worker who treated him for many years, saying he did have PTSD. There were some VA examinations and a private doctor who did not diagnose him with PTSD. And the two VA opinions, the 1997 Menchum and Carter decision, excuse me, opinion, and the 2001 Giffen opinion, both found no PTSD because he did not manifest certain symptoms under the DSM-IV criteria. Mr. Forcier subsequently submitted a medical record from the VA hospital, the psychiatric nurses' notes, indicating that he had symptoms that appeared to fall into the categories that Dr. Giffen, in particular, had identified as lacking symptoms. The board dismissed his evidence as not pertinent to the issue because it felt like the issue was stressor verification and not diagnosis. The board essentially engaged in a circular bit of reasoning in saying that they didn't have any need to consider the stressor or verify that because he really didn't have a confirmed diagnosis of PTSD. He didn't have a diagnosis of PTSD because the stressor hadn't been verified. They say both things in the course of the board decision. The board essentially rejected the November 2001 treatment note as irrelevant to the question of diagnosis because it said they were merely clinical observations, mind you. And they said that wasn't relevant to diagnosis because, in the board's view, the issue really was stressor verification and the board felt like that hadn't been done. So we argued to the veterans' court that the board had engaged in a circular reasoning. The veterans' court said... Let me make sure I understand. What is the... Point me to the place if you would in the board's opinion where they focus on the absence of the stressor as the sole ground for the conclusion of the examiners that there was no PTSD? Actually, the board addresses that issue at page 28, Your Honor, and it's in the context of the duty to assist. They're talking about no need to verify the stressor and they acknowledge the submission of the November 2001 information in the middle of the page there. And they say, further medical evaluation is not warranted on the question of diagnosis, in other words, because the presence of a stressor to support the diagnosis is not shown. Are you reading... I'm lost. The first full paragraph, Your Honor, it says, although the attorney representative has submitted a VA psychiatric clinic progress note reflecting symptoms of post-traumatic stress disorder, further medical evaluation is not warranted because the presence of a stressor to support the diagnosis is not shown. Well, then the next sentence is more fully explained below. It concludes that the diagnosis of PTSD has not been confirmed. I read that to be not solely predicated on the absence of a stressor. Do you read it differently? Well, the board comes back to it at page 45 and talks about the November 2001 note again. And at that point the board says, well, we're not interested in this evidence of new symptoms because they're just clinical findings and what this case really turns on is verification of a stressor. It's at the bottom of the page, Your Honor, page 45. The case really turns on verification of a claimed stressor and the etiology of a disease, which they say is a question of forensic medicine. The board seemed to be looking for another medical opinion that would counterbalance the VA medical opinions and nurses. And that certainly does not amount to that, and it never did amount to that. And it wasn't proffered on that basis. It was offered. As I understand it, the two VA psychiatrists that conducted an examination of Mr. Forcier concluded that there were other factors missing that would indicate that PTSD had not been established. And I did not read anything in the record or in the board's opinion to suggest that those two missing factors were related to the stressor question. No, they were not related to the stressor question. If those two factors are missing, then isn't the board correct, and wasn't the Veterans Court correct in concluding independent of the stressor question that PTSD had not been established? Well, but that's the very significance of the November 2001 treatment report by the psychiatrist, because in that note it's reported that he has symptoms in the very two categories that Dr. Gifford identified as missing symptoms in his examination. To back up just a second, the 1987 two psychiatrist examination, Drs. Kamichema and Carter, stated that he did not meet all of the criteria for DSM for PTSD. They don't specify which ones he met and which ones he didn't. I'm sorry for interrupting, sir. The problem, of course, is that we don't have jurisdiction to examine the facts or the application of all the facts. We've got to simply look at legal questions, and the question is whether there is somehow a violation of the Chenery Doctrine or some other inappropriate interpretation of law. And I don't see where you've made your case on those issues. There are a couple of things in there. One is that the significance of the 2001 note is that the basis of both of the VA opinions stated in them is he doesn't have the symptoms in the requisite criteria. And indeed the court relied very heavily on Dr. Gifford's opinion, because Dr. Gifford says, even if you could verify the stressor, he doesn't have showings under criteria C and D. Well, the November note indicates that he does have symptoms under C and D, and Dr. Gifford, who examined him in March 2001, never got to address that. He never got to consider whether that might have affected his opinion. So one of our contentions is that the court, in saying that the board's weighing of the evidence, that the board's really this expression of a preference for the opinions of the VA examiners, was okay, that that passes muster under 7104 D1, is in effect a holding that all the board has to do is express a preference for an opinion, and then it can ignore factual evidence that seems to challenge that opinion. And I think I used the example in the brief of Magellan and the flat earth. I thought of a better analogy. If the government issues a report that says, we don't think there's any such thing as flying saucers, because there have been no pictures taken of flying saucers, and then somebody comes in with a photo that purports to be a picture of a flying saucer, no court could certainly, or agency could say, well, we're not going to look at that evidence and consider it, because we already have an opinion that there are no flying saucers. The very basis for the conclusion that the man did not have PTSD is that he didn't have symptoms, and November noting the case that he does have symptoms, at least potentially. And so the court, in saying that the weighing of it, for one thing, the board sort of balanced factual evidence from the VA, psychiatry nurse, against an opinion. And they're not the same thing. It's out of the ordinary. The opinions of the VA that the board preferred were based on lack of symptoms, and this is new factual evidence that the board simply dismissed as not being relevant to the issue, because the board thought the issue was verification of the specimen. The board keeps kind of mixing and circling one on the other, and the court, although it picked up on the problems in the analysis by the board, as to the stressor, it goes through a discussion of the errors that we raised and agreed with us that the findings on the stressor and the plausibility of the sexual trauma having occurred was very much flawed. But it excused the whole thing by saying the diagnosis analysis that the board made was OK. That's where we get to the tenory issue that I've raised, because the board relies heavily on Dr. Giffen, who's the one guy who says, even if you verify the stressor, I'm not satisfying his PTSD because of his lack of symptoms. That, in turn, brings in the November 01 note problem again. And the secretaries responded that, well, it looks like the board did rely on Giffen. It's not at all clear what they did, because the board's very confused about whether Dr. Giffen's not consistent. Either the board relied on him, despite the fact that he was a psychologist, and it said it didn't favor psychologists' opinions, or it didn't rely on him, in which case the court took off on a reason. But in any event, the court ignored the real reasons that the board rejected the 2001 note, which was that it didn't bear on stressor verification. The court instead said, it all turns on Giffen's opinion, which excused the verification of the stressor, but on the basis of findings that there were no symptoms, without considering the eventual evidence that there were symptoms. There's also in here an issue of the duty to assist, and a misunderstanding of that. And it's kind of subsumed in the reasons for Macy's argument that the court, in effect, interpreted duty to assist as not requiring an additional medical examination when new evidence comes to light that would seem to challenge the medical evidence that the board is relying on. And the court sanctioned the board's dismissal of that evidence, and therefore implied that he read 5103, camp A and D, not to require a medical opinion in view of new evidence. And that is incorrect, as well. I do want to touch, I don't want to leave all the jurisdictional stuff to rebuttal, in case it comes up again. But the secretary will certainly raise it. I want to be very clear that this court has wrestled with the jurisdiction thing many times. But it has acknowledged, I think, in the Bailey decision, often by Judge Bryson, as well as others, that in order to analyze the legal issues, it is sometimes necessary to take notice of what the facts are. In this case, we don't have to have any resolution of the facts relations. And indeed, we can't. All this court can say is that to decide a case based on certain medical evidence, which has been later contradicted or challenged, without then getting a new medical opinion to reexamine that, deprives the veteran of a full look at the evidence. And that's all legal reasoning and not factual. Thank you. May it please the court. I'd like to start by directing the court's attention to page 44 of the joint appendix. I think if you will look at the bottom of the page, it's very helpful to put things in perspective. This is a part of the board's decision. In the very last paragraph on page 44, before starting to talk about the self-diagnosis of the patient, as reported by the nurse, the board says equal weight is not accorded to each piece of evidence contained in the record. Every item of evidence does not have the same probative value. That's the heart of Mr. Forcier's case. No matter how he tries to dress up the issues,  to this nurse's opinion. And basically, what the board said is this nurse's opinion is based on the proclamations of Mr. Forcier. A few months after being told that he had two missing symptoms, he went to a nurse and declared that he had two missing symptoms, and she wrote it down. And basically, the board said, we do not find that probative. And what Mr. Forcier says is, that's not proper. Well, that is proper. That's the board's job, to figure out the evidence. And that's not this court's job. And I wanted to, because there's some question about whether or not a new opinion was required, because the nurse gave this report of Mr. Forcier's comments. And I wanted to refer to the Wells case, because I think that the facts and the holding of the Wells case is very instructive. In the Wells case, the claim was made, I'm entitled to a medical opinion. You didn't go and get a medical opinion. Well, the court in Wells made a distinction between two separate issues. One was a legal issue. The other one was the application of a lot of facts. And the court said, we have no jurisdiction over that. The legal issue was whether or not, as a blanket matter, in all cases, that Mr. Wells was entitled to a medical opinion. Because that was the claim that was made. In all cases, we're entitled to a medical opinion. And the court said, no, if you look at the statute, you don't get a medical opinion in all cases. There's various caveats and so forth. And the court ruled on that as a legal holding. Then Mr. Wells said, but in the circumstances of my case, I clearly should have gotten a medical opinion, because I meet the various criteria. On that issue, the court said, look, now you're beyond our jurisdiction. It's not for us to come in and decide, in the guise of abusive discretion legal holding, whether or not the evidence was evaluated properly below. That is something to be decided before you get to this court. And that's essentially, that second holding is exactly what Mr. Forcier calls. Mr. Forcier is coming in and saying, because of the nature of the nurse's opinion, then I should get a further medical analysis. What I'm saying is, whenever the evidence is in conflict, for example, as to whether or not all the indicia of PTSD are there, when the evidence is in conflict, then there's no need to insist. If the board and the CDC conclude that there was no need for an additional medical exam, there's no way we can get near that. That's what you're saying. Right. As long as you have to, it's a question of judgment in terms of the weight of the evidence. That's right. Now, the Court of Appeals for Veterans Claims can get involved, because there's a certain level of review. The only place for the court, our court, to have any role in the duty of assist is where the secretary concedes that he failed to supply the requisite assistance. Right?  get to us, under your reading as well? In Wells, the court said that you could vindicate a right to a medical opinion if there is some kind of blanket obligation that's clear was not met. Usually, it's a question of whether it's clear that there's missing. In other words, it was undisputed facts in Wells that we didn't give him a medical opinion. And then the question was whether or not simply by alleging a right to a medical opinion was sufficient to have the agency be required to give one. And so that doesn't really turn. The only facts in that case are the allegation that we want a medical opinion and the decision not to give him one. It doesn't depend on the circumstances of the case. Mr. Forcier's argument here is different in that he says, look, I can see what the record looks like up to this nurse that comes in and offers to put some evidence in the record. And he's saying, I think that final piece of information is enough to alter the balance that you ought to go back and have another expert look at his file. Well, in that case, the board considered the argument that was made by Mr. Forcier and ruled that it was not probative in comparison to the other evidence that they had. As I look at it, I'm really going to ask the same question that Judge Clement should have, I think, just to make sure I understand that. I take it your position doesn't depend on how powerful the nurse's evidence really is. If that evidence, that nurse could have absolutely compelling evidence, but if the board decided it just doesn't outweigh what we already have, there's no way that this court can touch it. Right. Am I contradicting your argument or not? No, I think that's right. But there's an intervening level. In other words, the Court of Appeals of Veterans Claims should intervene. If they're there, there's a certain level of review there. But once it gets past them, I wanted to, the discussion of the Chenery argument that Mr. Forcier makes is not really related. He tries to tie it together, but it's not really related to the nurse's report. The Chenery argument is that the Court of Appeals of Veterans Claims decided the case on different grounds. And that's, I think, just a mistake. The Court of Appeals of Veterans Claims decided on exactly the same grounds. In other words, the board gave two reasons for denying the claim. And the Court of Appeals of Veterans Claims gave only one reason. But it was the same reason. It was different from Mayfield. In Mayfield, the material facts were different. But in this case, the material fact is the same. And the material fact that the board found is that the necessary element of showing a diagnosis of post-traumatic stress disorder had not been demonstrated. And that's the same. What's your response to Mr. Forcier's argument that the board decision is circular? They say, well, I'm sorry, no proof of a stress disorder. And then they say, OK, no proof of PTSD because there's no proof of stress disorder. I don't think that the, I guess this is a good language point. I understand how you're making that argument. Yeah, I may have said that, but I just don't see it in the opinion. I point to the same language. I was scrolling down the page with Judge Bryson that they mentioned the stressor. But then they go on in the next sentence to mention that there was no diagnosis. I mean, the board clearly found both. The board clearly found that there was no stressor. There's no link. But the board also found that the diagnosis was not there. And that's sufficient. And I noted in our brief that the board also relied on Dr. Gifford. It didn't describe Dr. Gifford's testimony in the same detail that the Court of Appeals versus claims did. But it relied on him. It's the same evidence. Most importantly, it's the same material fact. Mayfield is different. Because in Mayfield, the material fact is whether there is a specific notice that met the specific statutory criteria. Therefore, in that case, the document or communications are very important. Because that's what's necessary to meet the statutory criteria. And in Mayfield, the board relied upon these 1999 communications, which were earlier and different. And then a completely different communication was relied upon by the Court of Appeals. So they looked at different material facts. In Mayfield, it even said, even if the Court of Appeals for Veterans Claims disagrees on the material fact, as long as they're talking about the same material fact, there's no chemical argument. In other words, in Mayfield, the court says, well, even if you came to a different conclusion on the same material fact, and then moved on to the question of whether or not the error was prejudicial, even though you might come up with a different logic, it's not a problem. Would it have passed the Chenery test on the PTSD issue if the CAVC opinion had started off by saying the board found insufficient evidence of the existence of PTSD for the following three reasons? We reject those reasons, but we see in the record basis for three more reasons, which we believe do successfully show the lack of PTSD. Would that pass the Chenery prophylaxis? I think it would pass Chenery, but I think it would run afoul of Hensley, which talks about making initial findings a fact. So there might be a problem with that scenario, but I don't think it's a Chenery problem. They found evidence in the record, but evidence on which the BDA had clearly not relied. So the BDA said, there are six facts we found, and we rely on three of them to say no PTSD. The case comes up to the CAVC, and the CAVC says, the three facts you rely on to show no PTSD are effective in some way. Throw them to one side. But we'll take those other three facts that we're clearly not relying on by the BDA, and we will say, we're going to rely on those facts, which have already been found, to prove up the court's legal conclusion of no PTSD. Would that be in our relationship? Well, I think that the problem with the hypothetical is that it fails to distinguish between a material finding of fact and various facts that might be related. Chenery said that the three facts that the CAVC relied on were not material facts. There would be a Chenery problem. Well, in your description, what I understand as the material finding of fact is that there is no diagnosis of post-traumatic stress disorder. And that the three facts that you talked about were sort of the underlying reasoning to reach that material finding of fact, no post-traumatic stress disorder. It's Chenery says that you have to be talking about the same material fact. And if you look at the Mayfield decision, at the end of the Mayfield decision, they say that as long as you're talking about the same material finding of fact, the same key legal element, there's not a Chenery problem. And that's what Mayfield says. Mayfield says even if you disagree on that, you can move to a question of prejudicial error or something like that. But you have to be focused on the same thing. And the problem with Mayfield is it wasn't. And Mayfield was sort of an unusual fact pattern because the nature of the statute made the material fact extremely narrow. More typically in these disability cases, the material finding is somewhat broad. Was there causation? Was there a disease? And in Mayfield, it was a very specific material fact because the notice provision is very specific. Thank you. Mr. Ellsberg, you have a couple of minutes. Thank you, Your Honor. Do I kind of in reverse order just quickly? Let me just, on the Chenery issue, I would just observe that the secretary suggesting the material fact is really the ultimate fact finding. In this case, because he doesn't have PTSD, in Mayfield, it was the notice was adequate. And this court said, that doesn't pass muster. You rely on different documents and a different basis to find that the notice was adequate. And that didn't pass the Chenery test. I want to emphasize there was no finding made by the board or the court that the nurse's note was flawed or inaccurate. And that's part of the point is that the board made no assessment of that evidence, whatever, except to say that it didn't bear on the stressor issue. It didn't relate to etiology of the disease. That the evidence stands as what it is. And this court can't judge the value of that evidence or the weight of the evidence. And I actually agree with the secretary. We don't really care. I acknowledge that we can't have this court examining the weight of that evidence, whether it was good evidence or not. The board acknowledged that it understood the significance of that evidence. At the bottom of A45, it said it recognizes that it was submitted because it evidenced symptoms that were not reflected, cited by Dr. Giffen, that were missing. It understood what the significance of it was. But it rejected it not because it made any finding that it was flawed or that it was contrived by the veteran, but because it didn't bear on the issue that the board thought was important, which was the stressor. Finally, I want to clarify that the circularity is that the board declared that there was no need to verify the stressor any further to work on that issue, despite the joint remand identified as a basis for remand, because there was no diagnosis of PTSD that was confirmed. Then it says there's no diagnosis based on these VA opinions, which it prefers. But then it says there's no need to consider the additional symptoms that seem to undermine those medical opinions, because that evidence doesn't bear on the stressor, which is the real issue. That's how it comes back full circle. So you really put a lot of weight on that last paragraph, the next to last paragraph of the opinion on 845 to 846. I mean, I've read that paragraph a couple of times. And I have to say that it's a little difficult to parse. But it doesn't seem to me that they're going quite as far as you suggest, particularly because at the end of the paragraph there's a reference to what they characterize as the diagnostic impressions of a care provider, which are usually predicated solely on the history provided by the claimant. That seems to be a suggestion that there is a less compelling basis on which to rely on evidence which is provided by somebody who's just reporting the impressions of the person. Well, and the board did actually mention that same aspect, that this is just based on the veteran's report, but it was analyzing Ms. Johnston's opinion as well. But that was clearly against veterans' law to reject a, and the court has recently addressed that in the Coburn case, saying that you cannot reject a medical opinion based on a report of the patient unless you find that there was something inherently unreliable or inaccurate about the statements of the veteran on which to rely. This is 2001. The November 2001 wasn't a physician, right? Wasn't that just a nurse's report? It's a psychiatric note, Your Honor. Right. And it was a routine physical. But not by a psychiatrist. No, sir. By a nurse, right? Yeah, by a nurse. And the whole point of it is not that it was a medical opinion. We never advanced it as that. It's an observation of symptoms. And it wasn't contrived by counsel for the veteran or anything. It's just regular treatment that he went to in November of 01. We didn't spot it until February of 03, I think, and realized, hey, this talks about symptoms that Dr. Gibbons said in March were missing. He ought to really look at that. And that was our point. Okay. Thank you, Your Honor. Thank you. The case is submitted.